**FILED**

NOV 1 5 2005

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| *ALBERTA DUKES,* | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. A-04-CA-743-SS** |
| | § | |
| *R. JAMES NICHOLSON,* | § | |
| *Secretary of Veterans Affairs,* | § | |
| *Department of Veterans Affairs,* | § | |
| **Defendant.** | § | |

## DEFENDANT UNITED STATES' MOTION TO DISMISS
## OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

TO THE HONORABLE SAM SPARKS, UNITED STATES DISTRICT JUDGE:

NOW COMES Defendant R. James Nicholson, Secretary, Department of Veterans Affairs, by and through the U.S. Attorney for the Western District of Texas, and submits this Motion to Dismiss Or, In The Alternative, For Summary Judgment. In support thereof, the Defendant offers the following:

### I. INTRODUCTION

*Pro Se* Plaintiff Alberta Dukes filed this lawsuit against the Department of Veterans Affairs on November 16, 2004, under Title VII of the Civil Rights Act of 1964 ("Title VII"), *as amended*, 42 U.S.C. ¶ 2000e, *et seq.*, alleging discrimination based on race (Black), gender (female), and reprisal when (a) she was subjected to a hostile work environment and "effectively demoted" when the Release of Information section was closed, and (b) she was denied two promotions.[1] (Complaint at unnumbered page 4). Defendant contends Plaintiff's employment discrimination and retaliation claims should be dismissed because she fails to state a claim for which relief can be granted because she cannot establish that she suffered any adverse employment action as a result of any action by the

---

[1]   In response to Magistrate Judge Austin's Order requiring Plaintiff to file a more definite statement, Plaintiff submitted the Final Agency Decision that more succinctly states the issues in this lawsuit. (DKT. # 4).

*/8*

Defendant; she fails to establish a *prima facie* case of discrimination or retaliation; and as to her denial of promotion claims, she failed to timely exhaust her administrative remedies. Moreover, Defendant submits that pursuant to 28 U.S.C. ¶ 1915(e)(2), the Court should dismiss Plaintiff's lawsuit because her allegation of poverty is untrue.

## II.   UNDISPUTED FACTS:  See Appendix

## III.   STANDARD OF REVIEW

**The Review of Employment Discrimination Claims.**

Where only circumstantial evidence of discrimination is offered, plaintiffs must rely on the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* approach, the plaintiff has the initial burden of proving a *prima facie* case by a preponderance of the evidence. *Id.*

Once the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant proffers such a legitimate reason, the burden shifts back to the plaintiff to show that the defendant's reason was merely a pretext for discrimination. *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 138-42, 120 S. Ct. 2097 (2000)). Throughout, the ultimate burden of persuasion remains with the plaintiff. *Reeves*, 530 U.S. at 143.

## V.   ISSUES PRESENTED

1.      Whether Plaintiff was discriminated against based on race (Black), sex (female), and reprisal (prior EEO activity in 2001) when: (a) She was subjected to harassment/hostile work environment, (b) On May 9, 2003, she was denied four hours of Administrative Leave to meet with

her attorney[2], (c) On March 24, 2003, following the realignment of the Release of Information office duties to the Temple facility, she was reassigned to perform clerk duties under Mildred Erickson at the Austin Outpatient Clinic, (d) She was not selected for the position of Supervisor Clerk, GS-303-6, Target 7/9, Announcement No. 2001-210; and (e) She allegedly was not provided a performance appraisal that was due on May 30, 2003, and without it she cannot maintain her grade.

      2.      Whether Plaintiff's case should be dismissed because her allegation of poverty in her Application to Proceed Without Prepayment of Fees is untrue.

## V. ARGUMENT

### A.    Dukes' Hostile Work Environment/Harassment Claim Should Be Dismissed Because She Fails to Establish a *Prima Facie* Case.

      To establish a hostile work environment claim, a plaintiff must prove that: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) that the harassment complained of was based on the protected status; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Felton v. Polles*, 315 F.3d 470, 483 (5th Cir. 2002). If the alleged harasser is a supervisor with immediate (or successively higher authority), the plaintiff need only satisfy the first four elements. *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 299 (5th Cir. 2001). For harassment to affect a "term, condition, or privilege of employment" it must be sufficiently pervasive or severe so as to alter the conditions of employment and create an abusive working environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

      Factors to consider in determining whether a work environment is hostile or abusive include such things as the frequency of the conduct; its severity; whether it is physically threatening or

---

[2]  The Final Agency Decision incorrectly states "March" 9, 2003. The Partial Acceptance letter correctly identifies the date to be May 9, 2003. (DEX 1, Depo Exh. 2).

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.* at 23. These standards for judging hostility are "demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. Boca Raton*, 524 U.S. 775, 786 (1998). "Properly applied, they will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.*

In the case at bar, Dukes' harassment/hostile work environment claims were dismissed by the agency, and therefore not investigated, because the incidents Dukes describes are not severe and/or pervasive to create a hostile work environment. Accordingly, the Agency determined that Dukes did not demonstrate that she suffered harm or establish that she was injured as a result of a material change in a term or condition of her employment status. (Append. at ¶¶ 7-10). The agency properly dismissed Dukes' hostile work environment claims because she cannot establish elements 2-5 necessary to state a *prima facie* case of a hostile work environment. Defendant submits that a review of the events Dukes describes in support of her harassment and hostile work environment claims do not establish a frequency of events that lead to a legitimate pattern of discriminatory conduct. Dukes fails to identify an incident that would be considered physically threatening or offensive. Further, she has not described a workplace permeated with discriminatory intimidation, ridicule, or insult that is sufficiently severe or pervasive to alter the work environment. (*See* Complaint at unnumbered page 2).

**B.      Dukes' Remaining Claims Should be Dismissed Because She Fails to Establish a *Prima Facie* Case of Discrimination or Retaliation.**

In order to establish a *prima facie* case of discrimination Dukes must show that she: (1) is a member of a protected class; (2) the Agency took some an adverse employment action; and (3) others outside her protected class who were similarly situated were treated more favorably. *See, e.g., Okoye v. Univ. of Tex. Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

To establish a *prima facie* case of retaliation a plaintiff must show that (1) she engaged in protected activity; (2) an adverse employment action was taken against her; and (3) a causal link existed between the protected activity and the adverse employment action. *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 191 (5th Cir. 2001).

In the Fifth Circuit, only "ultimate employment decisions" qualify as the adverse employment actions necessary to establish a *prima facie* case of discrimination or retaliation. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997); see also *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995). Ultimate employment decisions include hiring, granting leave, discharging, promoting, and compensating. *Mattern*, 104 F.3d at 707.

### 1.    Alleged Denial of Administrative Leave.

Dukes fails to establish a prima *facie case* of discrimination because she fails to establish that she suffered an adverse employment action and that others outside her protected class who were similarly situated were treated more favorably. The only accepted issue by the Agency regarding denial of administrative leave is Dukes' complaint that on May 9, 2003, she was denied four hours of Administrative Leave to meet with her attorney. Instead, she had to use her Annual Leave. This claim has no merit as the evidence shows that Dukes cancelled this appointment and her four hours of annual leave were restored. (Append. at ¶ 14-15). Dukes also contends that their were several other times that her requests for administrative leave to work on her EEO cases were denied. (Complaint at p. 2, ¶ A(d)). In accordance with Title 29 C.F.R. § 1614.605 (b), Complainants are entitled to receive only **a reasonable amount of official time**, if otherwise on duty, to prepare the complaint and to respond to agency and EEOC requests for information. (Emphasis added). By Dukes own account, she has received approximately 67-71 hours of administrative leave since 2001 to work on her EEO cases. (Append. at ¶ 15). Further, Dukes admitted at deposition that each and every time she needed time-off

Dukes. Δ's MTD                                                                                    Page 5

from work to meet with her attorney or work on her EEO case, she was either allowed to take annual leave or was given administrative leave. (Append. at ¶¶ 16-17). When Dukes was asked by the EEO investigator to identify employees whom she believed received better treatment when they requested administrative leave to work on their EEO matters, Dukes identified 8 individuals, which include two Black females and two Black males. Dukes subjective belief that she was denied administrative leave in some instances because she is a Black female does not entitle her to judicial relief. *Lawrence v. Univ. of Texas Med. Branch*, 163 F.3d 309, 313 (5th Cir. 1999) ("A subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief."). Therefore, Dukes cannot establish a *prima facie* case of race or sex discrimination.

Additionally, Dukes cannot establish a *prima facie* case of retaliation because, not only does she fail to establish an adverse employment action, but she also cannot establish a causal link between her EEO activity in June 2001 and the Agency's denial of administrative leave. Her conclusory allegations, speculation, and unsubstantiated assertions are inadequate to meet this burden. *See e.g., Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The evidence shows Dukes received at least 67 hours of administrative leave since June 2001. Moreover, she has never been denied annual leave to work on her EEO claims. (Append. at ¶¶ 15-17).

### 2.    Reassignment And Alleged Demotion Claim

Dukes was reassigned from the Release of Information Office (within the Patient Financial and Support Service) at the Austin Outpatient Clinic, effective March 23, 2003, following the Department of Veterans Affairs' decision to realign the Release of Information duties in Austin to the Temple facility. Dukes was the only employee in the Release of Information section at the time it was closed. She was transferred back to Mildred Erickson's department to work as a medical records clerk, where she retained her same pay grade and step. (Append. at ¶ 20). A job transfer may qualify as an adverse

employment action if the change makes the job "objectively worse." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004); *see also Burger v. Cent. Apt. Mgmt., Inc.*, 168 F.3de 875, 879 (5th Cir. 1999)(a plaintiff's subjective preference is not relevant under Title VII; the proper standard is an objective one). In order for Dukes to establish that her transfer was an adverse employment action, she must show more than a mere lateral transfer; she must present sufficient evidence that the transfer equated to a "shift change that involves changes in duties or compensation or can objectively be characterized as a demotion." *Hunt v. Rapides Healthcare Sys.*, 277 F.3d 757, 770 (5th Cir. 2001). The Fifth Circuit has repeatedly held that an employment action that might limit an employee's future opportunities for promotion, but does not itself affect the employee's job duties, compensation, or benefits, does not qualify as an adverse employment action. *Hamilton v. TX Dept. of Trans.*, 85 Fed. Appx. 8, 12 (5th Cir. 2004). A job transfer without an accompanying decrease in compensation or other objective evidence of a demotion is not an adverse employment action. *Serna v. City of San Antonio*, 244 F.3d 479, 485 (5th Cir. 2001).

Moreover, even though Dukes was the only employee effected by the closing of the Austin Release of Information Office, the Chief, Patient Financial & Support Services, Jennifer Fay, also during this same time period relocated the medical records file room from the Austin Outpatient Clinic to the Temple site. This relocation decision resulted in two medical records file room employees, David Henderson and Russell Godsey (both White males), to also be reassigned to work for Mildred Erickson. (Append. at ¶ 20-21). Because Dukes cannot establish that her reassignment was an adverse employment action and she cannot establish that the Agency treated similarly situated employees outside of her protected class differently, she has failed to establish a *prima facie* case of discrimination.

Likewise, Dukes cannot establish a *prima facie* case of retaliation because, not only does she fail to establish an adverse employment action, but she also cannot establish a causal link between her EEO activity in June 2001 and her transfer in March 2003. Even assuming *arguendo*, that Dukes can establish a *prima facie* case of discrimination and retaliation, she cannot overcome the Agency's legitimate reasons for closing the Austin Release of Information Office. (Append. at ¶¶ 20-21).

### 3.    Non-selection

The Department of Veterans Affairs, Office of Employment Discrimination Complaint Adjudication ("OEDCA"), dismissed Dukes' claim of discrimination and retaliation based on her non-selection for the position of Supervisory Clerk, GS-306-6, as untimely.   The position was filled in January 2002, but Dukes did not seek counseling regarding this matter until July 11, 2003, approximately 18 months after the selection was made. (Append. at ¶ 11). Dukes asserts the reason for the delay was that she obtained new information between late March and mid-April of 2003 that proved she was actually better qualified than the selectee (Lenard "Don" Gloston, a black male), information she says she did not have when she was notified of her non-selection. (*Id.*).

Government employees can sue their employers pursuant to Title VII only if they first timely exhaust their administrative remedies as defined by the statute and the regulations promulgated thereunder. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835, 96 S.Ct. 1961 (1976).   Federal employees must bring incidents of discrimination to the attention of their employer's EEO counselor within 45 days of the alleged event. 29 C.F.R. § 1614.105(a)(1). The federal courts require the employee to file her administrative complaint in a timely manner. *Tolbert v. United States*, 916 F.2d 245, 247 (5th Cir. 1990). The employee bears the burden of establishing that she acted in a timely fashion. *Saltz v. Lehman*, 672 F.2d 207, 209 (D.C. Cir. 1982); *see also Hamilton v. Komatsu Dresser Insudstries, Inc.*, 964 F.2d 600, 606 (7th Cir. 1992).

Even though the Department of Veterans Affairs, Office of Resolution Management ("ORM") accepted and investigated this untimely claim, the OEDCA properly dismissed the claim as untimely. The ORM's acceptance and investigation of Duke's non-selection claims does not serve as a waiver of the exhaustion requirement by the Department of Veterans Affairs. *See e.g., Oaxaca v. Roscoe*, 641 F.2d 386, 290 (5th Cir. 1981) (holding that "we reject Oaxaca's contention that the federal agency, by merely accepting and investigating a tardy complaint, automatically waives its objection to the complainant's failure to comply with the prescribed time delays"). Instead, the applicable case law holds that a failure to notify the EEO counselor in a timely fashion bars a claim absent a defense of waiver, estoppel or equitable tolling. *Pacheco v. Rice, Secretary of Air Force*, 966 F.2d 904, 905 (5th Cir. 1992). Additionally, the Fifth Circuit requires a plaintiff seeking to invoke the doctrine of equitable tolling to act diligently in protecting her rights. *Wilson v. Secretary, Dep't of Veterans Affairs*, 65 F.3d 402, 404 (5th Cir. 1995) (holding that a plaintiff's failure to exercise due diligence to preserve her legal rights precludes her from invoking equitable principles to excuse that lack of diligence).

Therefore, Dukes' discrimination and retaliation claims regarding her non-selection for the Supervisory Clerk position should be dismissed for her failure to timely exhaust her administrative remedies.

### 4.     Performance Evaluation

Dukes alleges that as of July 28, 2003, she had not received her performance evaluation from Mr. Lenard Gloston that was due on May 30, 2003. She alleges in her judicial complaint filed in this case on November 16, 2004, that she was unable to obtain or maintain her grade without the evaluation. (Emphasis added). The evidence establishes that Dukes suffered no harm, i.e., she never lost any pay or benefits, as a result of her not receiving this performance evaluation. (Append. at ¶

26). Further, Dukes was reassigned to work for Mildred Erickson effective March 23, 2003, and was no longer under the supervision of Mr. Gloston. (*Id*.). Additionally, Dukes did receive a Performance Appraisal from Mr. Gloston for the period of April 1, 2002 through March 31, 2003. (*Id*.).

Dukes cause of action based on Mr. Gloston's alleged failure to provide Dukes with an evaluation that was due on May 30, 2003, should be dismissed for failure to state a claim for which relief can be granted. *Broadway v. Dept of Homeland Security*, 2005 WL 1400452 (E.D. La. June 2, 2005)(citing *Dollis v. Rubin*, 77 F.3d 777 (5th Cir. 1995). Similarly, a failure to timely and properly evaluate Dukes' work, even if true, does not alone rise to the level of an ultimate employment decision as described in *Dollis*. *See Broadway*, 2005 WL 1400452 at *3.

Moreover, Dukes cannot establish that someone similarly situated outside her protected class received more favorable treatment. According to Dukes, two White Males, David Henderson and Russell Godsey, also did not receive their evaluations from Mr. Gloston that she contends were due in May 2003. (Append. at ¶ 27).

**E.    Dukes' Obtained *In Forma Pauperis* Status By Misrepresenting Her Financial Status**

On November 16, 2004, Dukes filed her Application to Proceed Without Prepayment of Fees and Affidavit. In paragraph 2 she acknowledges that she is employed but has been on sick leave for 5 months **with no income**. (Emphasis added). (DKT # 1). Pursuant to 28 U.S.C. § 1915(e)(2)(A), the court shall dismiss a case at any time when there has been an allegation of poverty that is untrue. (Append. at ¶¶ 28-32). *See e.g., Balliviero v. Konrad*, 2002 WL 139911 (E.D.La. Jan. 31, 2002).

## V.  <u>PRAYER</u>

ACCORDINGLY, the Defendant respectfully requests that the Court grant summary judgment based on the foregoing reasons and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

JOHNNY SUTTON
UNITED STATES ATTORNEY

By:     _____

R. BARRY ROBINSON
Assistant United States Attorney
Arkansas Bar No. 85206
816 Congress Avenue, Suite 1000
Austin, Texas 78701
(512) 916-5858 / 916-5854 (fax)

ATTORNEYS FOR DEFENDANT,
UNITED STATES OF AMERICA


## CERTIFICATE OF SERVICE

I, R. BARRY ROBINSON, do hereby certify that a true and correct copy of the above and

foregoing **Defendant United States' Motion to Dismiss Or, In The Alternative, For Summary**

**Judgment** has been served by placing same in the United States mail, Certified Return Receipt

Requested postage prepaid, on this the _15th_ day of November 2005, addressed to:

    Alberta Dukes, *pro se*
    1601 Montopolis Drive
    Austin, TX   78741

                _____

                R. BARRY ROBINSON
                Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| *ALBERTA DUKES,*<br>    Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. A-04-CA-743-SS |
| *R. JAMES NICHOLSON,*<br>*Secretary of Veterans Affairs,*<br>*Department of Veterans Affairs,*<br>    Defendant. | §<br>§<br>§<br>§<br>§ | |

## DECLARATION OF AMANDA HILL

I, Amanda Hill, declare from personal knowledge, in lieu of an affidavit, under 28 U.S.C.
§ 1746 as follows:

1.    I am an Attorney with the U.S. Department of Veterans Affairs and I was the
Agency Counsel who handled Alberta Dukes' EEO case during the administrative phase.

2.    I declare under the penalty of perjury that to the best of my knowledge,
information, and belief, the documents listed as defense exhibits ("DEX") 2 - 6 filed in support
of Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment are true and
correct copies of documents contained within the original Equal Employment Opportunity
Commission administrative records.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED ON this 15th day of November 2005.

AMANDA HILL
Staff Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| *ALBERTA DUKES,* | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. A-04-CA-743-SS** |
| | § | |
| *R. JAMES NICHOLSON,* | § | |
| *Secretary of Veterans Affairs,* | § | |
| *Department of Veterans Affairs,* | § | |
| | § | |
| **Defendant.** | § | |

## APPENDIX TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.  RELEVANT FACTUAL SUMMARY

1.      Plaintiff Alberta Dukes ("Dukes") is a black female born on May 20, 1950.  (DEX 1, Dukes Depo at p. 16).

2.      Dukes began working at the Department of Veterans Affairs (VA), Central Texas Veterans Health Care System, Austin, Texas as a GS-4 file clerk in 1999. (DEX 1, at p. 10, 16-18). In 1999, she applied for and received a GS-5 medical clerk position. (Id. at 18-19). In November 2000, Dukes applied for and received a supervisory position in the medical records file room. (Id. at p. 19). After seven months in this position, Dukes was transferred back to her medical support clerk position. (Id. at p. 20). In July 2001, Dukes was transferred to the Release of Information department. (Id. at p. 23-24).

3.      On March 5, 2003, Dukes was notified that a decision had been made to relocate the medical records file room from the Austin Outpatient Clinic to the Temple site. Additionally, due to the strengthened controls on health information and to ensure compliance with the Health Insurance Portability and Accountability Act, a decision had been made to realign the Release of

Information ("ROI") duties in Austin to the Temple facility. As a result, effective March 23, 2003, Dukes was reassigned to her current position as a clerk within the Austin Clinic, where she works for Mildred Erickson. (DEX 1, Dukes Depo. at p. 67 & Depo. Exh. 7; DEX 10, Fay Decl.).

4.    On March 27, 2003, Dukes first contacted an EEO Counselor claiming that she was being harassed in retaliation for a prior EEO complaint that she filed in June 2001. (DEX 2, April 1, 2003 Notice of Informal Counseling). During the pre-complaint counseling, Dukes requested to amend four additional claims of discrimination which are reflected in her formal complaint of Discrimination. (DEX 3, Notice of Right to File a Discrimination Complaint at ¶ 1; DEX 1, Dukes Depo at p. 31 & Depo Exh. 1, Formal Complaint).

5.    Dukes submitted her formal Complaint of Discrimination on July 26, 2003, which was deemed filed on July 28, 2003, the date it was received by the Department of Veterans Affairs, Office of Resolution Management. (Id.; DEX 4, Notice of Receipt). In her formal Complaint of Discrimination she alleges discrimination based on Race (Black), Sex (Female), and Reprisal for prior EEO activity.

6.    On October 17, 2003, the Department of Veterans Affairs, Office of Resolution Management ("ORM") issued its Partial Acceptance Letter. (DEX 1, Dukes Depo at p. 31 & Depo Exh 2). The issues raised by Dukes that she claims were discriminatory and retaliatory are as follows:

(a) Claim A: <u>Harassment/Hostile Work Environment</u>

*See* Dukes' Complaint at p. 2, ¶ 5(A)(a) - (i).

(b) Claim B: <u>Denied Administrative Leave</u>

*See* Dukes' Complaint at p. 2, ¶ 5(A)(d) wherein she alleges that "on several occasions, Plaintiff was denied administrative leave when I tried to schedule appointments with her (sic) attorney to prepare for her many grievances and related legal appointments."

The issue that was accepted for investigation is as follows:

"On May 9, 2003, you were denied four hours of Administrative Leave to meet your attorney. You were advised the leave request would be approved, but you would have to use Annual Leave."

(c)  Claim C: <u>Demotion/Reassignment</u>

*See* Dukes' Complaint at p. 2, ¶ 5(A)(a) wherein she alleges "her section (Release of Information, ROI) and the File Room were closed in retaliation to (sic) her EEO activity; thus she was effectively demoted."

(d)  Claim D: <u>Non-selection</u>

Dukes alleges that in March and April 2003, she obtained information concerning the Supervisor Clerk position which she applied for, but was not selected.  Based on the information that she obtained, Dukes claims that she has more experience than the person selected.  (*See* Dukes Complaint at p. 3, ¶ 5(B)(a); DEX 1, Depo Exh. 2).

Dukes also alleges that she did not apply for a clerk position because Mr. Gloston told her, and others, that the position was for a legal clerk.  Dukes alleges that Mr. Gloston hired a friend, Maxie Ginn, to fill this position in January 2003.  Dukes admits that Ms. Ginn has a legal clerk certificate but she "did not deserve" the position.  (*See* Dukes Complaint at p. 3, ¶ 5(B)(a)).

(e)  Claim E: <u>Performance Appraisal</u>

Dukes alleges that as of July 28, 2003, she did not receive her performance evaluation from Mr. Gloston that was due in May 2003. She alleges that she cannot obtain or maintain her grade without the evaluation. (Complaint at p. 2, ¶ 5(A)(i); DEX 1, Depo Exh. 2, p. 2).

7.      Of the issues presented by Dukes in her Formal Complaint, ORM dismissed <u>Claim A, Harassment/Hostile Work Environment</u> because this claim did not describe incidents that were severe or pervasive to create a hostile work environment. Additionally, Dukes did not demonstrate that she suffered harm or establish that she was injured as a result of a material change in a term or condition of her employment. (DEX 1, Depo Exh 2 at ¶¶ 3&4).

8.      At the conclusion of the EEO Investigation, the Department of Veterans Affairs notified Dukes in writing of her right to request either a hearing and decision by the EEOC administrative judge, with a subsequent final action by the Department, or an immediate final decision by the Department without a hearing. According to the complaint file, Dukes requested a hearing before an EEOC Administrative Judge. (DKT # 4; DEX 5, Final Agency Decision at p. 1, ¶ 2).

9.      However, the Administrative Judge dismissed the request for hearing due to the failure of Dukes (or her attorney) to provide a satisfactory response to a Show Cause Order and due to Dukes' attorney's attack on the integrity of the EEO process. Thereafter, the Administrative Judge forwarded the complaint to the Department's Office of Employment Discrimination Complaint Adjudication (OEDCA) for a Final Agency Decision ("FAD") based on the investigative record. The OEDCA issued its FAD on August 18, 2004. (DEX 5, FAD at p. 1, ¶ 3; *see also* FAD filed at DKT # 4).

10.     In its decision, the OEDCA upheld the Department's Office of Resolution Management's decision to dismiss Dukes' claim of harassment/hostile working environment. (Id. at p. 2, ¶¶ 1-3).

11.     In addition, the OEDCA dismissed Dukes' Claim D: Non-selection for the position of Supervisory Clerk, GS-306-6, as untimely. The position was filled in January 2002, but Dukes did not seek counseling regarding this matter until July 11, 2003. In Dukes' July 11, 2003 notice to the EEO Counselor, requesting the addition of three claims, she asserts the reason for the delay was that she obtained new information between late March and mid-April of 2003 that proved she was actually better qualified than the selectee (Lenard "Don" Gloston, a black male), information she says she did not have when she was notified of her non-selection. (DEX 5. FAD at p. 2, unnumbered ¶ 4; DEX 6, Dukes' EEO Affidavit p. 72-77; DEX 1 , Dukes' Depo. at p. 76-77 & Depo Exh. 2, July 11, 2003 notice to EEO Counselor). However, Dukes knew in January 2002 that Mr. Gloston had been selected. (*Id.*).

12.     Title 29 C.F.R. § 1614.105, *Pre-complaint processing*, provides in relevant part:

    (A)     Aggrieved persons who believe they have been discriminated against . . . must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.

        (1)     An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

13.     Title 29 C.F.R. § 1614.107, *Dismissals of complaints*, provides in relevant part:

    (a)     Prior to a request for a hearing in a case, the agency shall dismiss an entire complaint:

        (2)     That fails to comply with the applicable time limits contained in §§ 1614.105 . . . unless the agency extends the time limits in accordance

with § 1614.604(c), or that raises a matter that has not been brought to the attention of a Counselor and is not like or related to a matter that has been brought to the attention of a Counselor.

## ADMINISTRATIVE LEAVE CLAIM

14.    On May 9, 2003, Dukes requested four hours of Administrative Leave to meet with her attorney. Her request for Administrative Leave was denied by her supervisor Helen Kerr. However, Dukes was allowed to take four hours of annual leave to meet with her attorney. (DEX 1, Duke Depo. at p. 33-35). Dukes cancelled this appointment and her four hours of annual leave were restored to her. (*Id*. at p. 41-44 & Depo Exhs. 3 & 4).

15.    Pursuant to Title 29 C.F.R. § 1614.605 (b), Complainants shall have a reasonable amount of official time, if otherwise on duty, to prepare the complaint and to respond to agency and EEOC requests for information. (DEX 7). During the administrative processing of Dukes' discrimination complaints, Dukes submitted a list of her EEO activity for the period June 1, 2001 through April 20, 2004, wherein she states that she has been give 63 hours of Administrative Leave since June 1, 2001. At deposition, Dukes testified that since April 20, 2004, she is not sure how much administrative leave she has been given, but estimates she received anywhere from four to eight additional hours. (DEX 1, Dukes Depo at p. 48-49).

16.    In response to Magistrate Judge Austin's Order requiring Dukes to file a more definite statement (DKT # 2), Dukes submitted a list of her EEO activity from June 2001 through December 2004. (DKT # 4). At deposition, Dukes explained that for each of her EEO activities noted on the list she either received annual leave or authorized absences. (DEX 1, Dukes' Depo at p. 86-87).

17.    Dukes testified at deposition that their were times when her requests for administrative leave were denied. In those instances, if she felt it was important enough, she would

take annual leave instead.  Also, anytime Dukes needed to take off from work to work on her case, she was either authorized annual leave or given authorized absence.  (DEX 1, Dukes Depo at p. 63-66).

18.     Dukes' testified at deposition that her immediate supervisors (Helen Kerr and Mildred Erickson) had to get the approval from one of four persons in order to authorize administrative leave for her to work on her EEO case.  (DEX 1, Dukes Depo. at p. 37-41).  The four people are:  1) Ion Barker (White female), 2) Jonathon Cruse (Black male), Deborah Kingwood (Black female) and Jim Apley (White male).  (*Id*.).

19.     When Dukes was asked by the EEO investigator to identify employees whom Dukes believed received better treatment when they requested administrative leave, she identified the following employees: 1) Glenda Mathis (Black female), 2) Kathy Sanders (Black female), 3) Derrick Scott (Black male), 4) Debra Hill (White female), 5) Diane Goodwin (she believes is a White female), 6) Carolyn Hoelscher-Kosel (White female), 7) Sue Tuck (White female), and 8) Ronnie Hunter (she believes he is a Black male).  All of these employees have been involved in EEO activity.  (DEX 6, Dukes EEO Aff. at p. 42-45).

## DEMOTION/REASSIGNMENT CLAIM

20.     Dukes was reassigned from the Release of Information Office (within the Patient Financial and Support Service) at the Austin Outpatient Clinic, effective March 23, 2003, following the Department of Veterans Affairs' decision to realign the Release of Information duties in Austin to the Temple facility.  The Agency felt the realignment was necessary due to the strengthened controls on health insurance as well as to insure compliance with the Health Insurance Portability and Accountability Act.  Dukes was the only employee in the Release of Information Department

at the time it was closed. Dukes was transferred back to Mildred Erickson's department to work as a medical records clerk, where she retained her same pay grade and step. (DEX 1, Dukes' Depo. at p. 16-17, 67; Depo Exh. 7; DEX 6, Dukes' EEO Affidavit, p. 82-83; DEX 10, Fay Decl.).

21.    Even though Dukes was the only employee affected by the closing of the Austin Release of Information Office, the two medical records file room employees, David Henderson and Russell Godsey, were also reassigned as a result of the decision to relocate the medical records file room (also within the Patient and Financial Support Service) from the Austin Outpatient Clinic to the Temple site. They too were reassigned to work for Mildred Erickson. (DEX 1, Dukes Depo Exh. 7; DEX 6, Dukes' EEO Affidavit, p. 82-83). Both David Henderson and Russell Godsey are white males. (DEX 6, Dukes EEO Affidavit at 87).

22.    Dukes contends in her sworn EEO Affidavit that was presented during the administrative phase of this case that her race was a factor in her being reassigned because "the agency as a whole" has issues with Black women, particularly in supervisory positions. ( DEX 6, Dukes EEO Affidavit at p. 65; DKT 4, Final Agency Decision at 4). Dukes also contends that Mildred Erickson is the only Black female supervisor in Austin. Dukes states that although Dukes was selected to be a supervisor, she was set up to fail. (Id. at 65-66; FAD at p. 4).

23.    Dukes contends that sex was a factor in her reassignment because she is a Black female, who she alleges are treated "the worst" as a group. (Id. at 66; FAD at p. 4).

24.    Dukes contends that her prior EEO activity was also a factor in the decision to reassign her because "it's just another form of harassing me" because she is filing complaints. (Id. at 70-71).

25.     Dukes feels that her reassignment following the closing of the Release of Information Office in Austin was a demotion because of the way it was done and the fact she was not given an opportunity to move to Temple with the position. She also contends that she could have advanced from the knowledge that she received in working in Release of Information and Medical Records, and feels that her current position is a dead end job. However, she did retain her pay and grade. (Id. at 71-72).

## PERFORMANCE APPRAISAL

26.     Dukes alleges that as of July 28, 2003, she had not received her performance evaluation from Mr. Lenard Gloston that was due on May 30, 2003. She alleges in her judicial complaint filed in this case on November 16, 2004, that <u>she was unable to obtain or maintain her grade without the evaluation.</u> (Emphasis added). (Complaint at unnumbered p. 2-3, ¶ (A)(i). At deposition, Dukes admitted that she never lost any pay or benefits as a result of her not receiving this performance evaluation. (DEX 1, Dukes Depo. at 82-83; DEX 6, Dukes EEO Affidavit at p. 87-88). Further, Dukes was reassigned to work for Mildred Erickson effective March 23, 2003, and was no longer under the supervision of Mr. Gloston. (DEX 1, Dukes Depo. Exh. 5). Dukes received a Performance Appraisal from Mr. Gloston for the period of April 1, 2002 through March 31, 2003. (DEX 1, Depo. at p. 83-84; Depo Exh. 8).

27.     According to Dukes, two White Males, David Henderson and Russell Godsey, also did not receive evaluations from Mr. Gloston that she contends were due in May 2003. (DEX 1, Dukes Depo. at p. 84-85).

**APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES AND AFFIDAVIT**

28.     On November 16, 2004, Dukes filed her Application to Proceed Without Prepayment of Fees and Affidavit. In paragraph 2 she acknowledges that she is employed but has been on sick leave for 5 months **with no income**. (Emphasis added). (DKT # 1).

29.     Dukes began her leave without pay status on Monday, June 28, 2004. (DKT 1, July 12, 2004 memorandum from Mary Lechler). On July 14, 2004, Dukes' Supervisor, Mildred Erickson, submitted on Dukes behalf a request for 224 hours of leave without pay, which was approved on July 20, 2004. (DEX 1, Dukes Depo. at p. 88-89 & Exh. 10). Also, on July 14, 2004, Ms. Erickson submitted on Dukes' behalf a request to become a leave recipient under the Voluntary Leave Transfer Program, which was approved on July 20, 2004. (DEX 1, Dukes Depo. at p. 91-92 & Exh. 12).

30.     On July 20, 2004, Dukes was notified that she met the requirements for participation in the Voluntary Leave Transfer Program and had been approved as a leave recipient for the period of her medical emergency. She was notified that her eligibility for participation in the program would begin on the expiration "of all your available leave" during the **period June 25-August 17, 2004.** (Emphasis in original). (DEX 1, Dukes Depo. at p. 92 & Exh. 13).

31.     On August 30, 2004, Ms. Mildred Erickson submitted on Dukes behalf a request for advanced sick leave in the amount of 240 hours. On September 14, 2004, the request was approved for 40 hours. Following a request for reconsideration, 120 hours of advanced sick leave was approved. (DEX 1, Dukes Depo at p. 90 & Exh. 11).

32.     Even though Dukes was off from work for approximately five (5) months, she received advanced sick leave and donated annual leave in amounts that effectively reduced her leave

without pay ("LWOP") status to the period beginning Friday, September 10, 2004 (beginning at 1:45 p.m.) through Friday, November 5, 2004.  This translates into being on LWOP status for 322.75 hours or approximately 8 weeks.  (DEX 8, James Apley Declaration).  As evidenced by the Declaration of Gregory Thompkins, Civilian Payroll Technician, Dukes was paid for the advanced sick leave and donated leave in the total amount of $4789.20.  The first payment was made on July 21, 2004 and the last payment was made on November 5, 2004.  These payments were made at Dukes' salary rate at the time which was a GS-679-5, Step 7.  (DEX 9, Thompkins Decl.).

## **EXHIBIT LIST**

DEX 1:     Dukes Deposition with exhibits

DEX 2:     Notice of Informal Counseling

DEX 3:     Notice of Right to File a Discrimination Complaint

DEX 4:     Notice of Receipt

DEX 5:     Final Agency Decision ("FAD")

DEX 6:     Dukes EEO Affidavit

DEX 7:     Title 29 C.F.R. § 1614.605 (b)

DEX 8:     Declaration of James Apley

DEX 9:     Declaration of Gregory Thompkins

DEX 10:   Declaration of Jennifer Fay

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

### Notice of Document/Attachment(s) Not Imaged
### but Stored with Document in Case File

**See Original File to View/Copy Document/Attachment(s)**

Civil Case No.          A-04-CA-743 SS

ALBERTA DUKES

VS.

R. JAMES NICHOLSON

Attachments to
Document #:          18

Description:          Defendant United States' Motion to Dismiss
                     or, in the Alternative, for Summary
                     Judgment

File Date:          11/15/05

Prepared by:          MLC

**This sheet to be imaged as the last page.**