IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2005 DEC 12 PM 2:03
CLERK
WESTERN DIST. ... COURT
OF TEXAS
BY _____

ALBERTA DUKES,

               **Plaintiff,**

-vs-

                                                **Case No.  A-04-CA-743-SS**

ANTHONY PRINCIPI, Secretary of Department
of Veterans Affairs,[1]

               **Defendant.**

## O R D E R

       BE IT REMEMBERED on the _12th_ day of December 2005, the Court reviewed the file in the above-styled cause, and specifically, Defendant R. James Nicholson's Motion to Dismiss or, in the alternative, for Summary Judgment [#18]. Plaintiff filed no response to this motion. Local Rule CV-7(d) provides "[i]f there is no response filed within the time period prescribed by this rule, [within 11 days of service of the motion], the Court may grant the motion as unopposed." However, a motion for summary judgment cannot be granted simply because there is no opposition. Therefore, the Court has reviewed the motion, the relevant law, and the case file as a whole, and now enters the following opinion and orders.

### Background

       Plaintiff Alberta Dukes is a Black female, who began working at the Department of Veterans Affairs as a GS-4 file clerk in 1999. Dep. Dukes at 10, 16–18. In 1999, she applied for and received a GS-5 medical clerk position. *Id.* at 18–19. In July 2001, Dukes was transferred to the Release of

---

     [1] The Court notes Defendant has correctly pointed out that R. James Nicholson was sworn in as the Secretary of Veterans Affairs on February 1, 2005; therefore, he is automatically substituted as the Defendant in this case pursuant to FED. R. CIV. P. 25(d)(1).

Information department. *Id.* at 23–24. On March 5, 2003, Dukes was notified the Release of Information section in Austin, in which she was the only employee at the time, would be closed, and she was transferred back to a medical records clerk, under Mildred Erickson's supervision, and maintained her current pay grade and step after the transfer. Dep. Dukes at 16–17, 67. The realignment that led to the closing of her section was based on the agency's desire to strengthen controls on health insurance and to insure compliance with the Health Insurance Portability and Accountability Act. Def.'s Mot. Summ. J., App. at 7. Two other white male employees were also reassigned within the agency at this time due to the realignment, and both men were also reassigned to work for Mildred Erickson. *Id.* at 8.

On March 27, 2003, Dukes first contacted an EEO counselor claiming she was being harassed in retaliation for a prior EEO complaint filed in June 2001. Def.'s Mot. Summ. J., Ex. 2. Dukes submitted her formal complaint of discrimination on July 26, 2003, and it was deemed filed on July 28, 2003. *Id.*, Ex. 4. She alleged discrimination based on her race (Black), sex (female), and in retaliation for prior EEO activity. In this formal complaint, Dukes raised the following claims: (1) hostile work environment/harassment; (2) denied administrative leave; (3) demotion/ reassignment; (4) denial of promotion; and (5) performance appraisal not received. Of these claims, the Department of Veterans Affairs Office of Resolution Management ("ORM") dismissed claim 1. At the conclusion of the EEO investigation, Dukes requested a hearing before an EEOC administrative judge, and that hearing request was dismissed due to Dukes's failure to provide a satisfactory response to a show cause order and due to her attorney's attack on the integrity of the EEO process. Def.'s Mot. Summ. J., Ex. 5. Thereafter the complaint was forwarded to the Office of Employment Discrimination Complaint Adjudication (OEDCA) for a Final Agency Decision

based on the investigative record. *Id.* The OEDCA issued its decision on August 18, 2004, in which it upheld the ORM's decision to dismiss the harassment/hostile work environment claim and dismissed Dukes's non-selection claim as untimely. *Id.* The OEDCA found no discrimination with respect to Dukes's remaining claims, finding she failed to establish by a preponderance of the evidence that she was discriminated against. *Id.* at 18.

Dukes filed suit in this court on November 23, 2004, asserting causes of action under 42 U.S.C. §§ 1981 & 2000e ("Title VII") alleging she was intentionally discriminated against for being a Black female and in retaliation for prior EEO activity. Pl.'s Orig. Compl. at 4. She asserts claims for a harassment/hostile work environment, demotion, and denial of promotion. *Id.* at 1–4. Defendant moves to dismiss Plaintiff's claims for failure to state a claim for which relief can be granted because she cannot establish she suffered any adverse employment action as a result of any action by Defendant, because she cannot establish a prima facie case of discrimination or retaliation, and because she failed to timely exhaust her denial of promotion claims.[2]

### Discussion

### I.    Motion to Dismiss

### A. Exhaustion of Denial of Promotion Claim

Dukes complains of discrimination and retaliation because she was not selected for the position of Supervisory Clerk in January 2002. Compl. at 3. Instead, Lenard "Don" Gloston, a Black male, was chosen for the position. Although the position was filled in January 2002 and Dukes knew in January 2002 that Gloston had been selected, she waited until July 11, 2003, eighteen

---

[2] Defendant also moves to dismiss Plaintiff's lawsuit because her allegation of poverty is untrue; however, the Court will not entertain this motion because it is mooted by the Court's decision granting summary judgment on the merits.

months later, to seek counseling with an EEO Counselor regarding this matter. Mot. Summ. J., App. at 5. Dukes asserts the reason for this delay was she obtained new information between March and April 2003 that proved she was actually better qualified than the selectee, information she did not have when notified of her non-selection. Def.'s Mot. Summ. J., Ex. 6 (Dep. Dukes at 75). This new information was that Gloston never worked in Release of Information or in the File Room. *Id.* Defendant contends Dukes did not timely exhaust her administrative remedies as to this claim; therefore, Dukes's discrimination and retaliation claims regarding not being selected as Supervisory Clerk should be dismissed.

A federal government employee claiming discrimination must exhaust her available administrative remedies before filing a complaint in federal district court, or the court will not have jurisdiction over the complaint. *Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 832 (1976); *Fitzgerald v. Sec'y, U.S. Dep't Veteran Affairs*, 121 F.3d 203, 206 (5th Cir. 1997). Federal employees must bring incidents of discrimination to the attention of their employer's EEO counselor within 45 days of the effective date of the personnel action complained of. 29 C.F.R. § 1614.105(a)(1). Here, not only did Dukes fail to raise this claim within 45 days of the non-selection decision she complains of, but neither did she raise the claim within 45 days of the date she reports she learned of the new information.[3]

A failure to notify the EEO counselor in a timely fashion bars a claim absent a defense of waiver, estoppel, or equitable tolling. *Pacheco v. Rice, Sec'y of Air Force*, 966 F.2d 904, 905 (5th

---

[3] Even if the Court were to assume she learned the information at the end of April, 45 days would have passed by mid-June, a month before she actually raised the claim with the EEO counselor. Therefore, even if Dukes was subject to equitable tolling, a finding the Court herein rejects, she still failed to timely exhaust her remedies after she became aware of the new information.

Cir. 1992). The employee bears the burden of establishing one of these exceptions should apply as a defense. *Wilson v. Sec'y., Dep't of Veterans Affairs*, 65 F.3d 402, 404 (5th Cir. 1995); *Nowlin v. RTC*, 33 F.3d 498, 503 (5th Cir. 1994). "Equitable tolling is appropriate when, despite all due diligence, a plaintiff is unable to discover essential information bearing on the existence of [her] claim." *Id.* at 906–07. The diligent inquiry requirement imposes on plaintiff an affirmative duty to proceed with a reasonable investigation in response to an adverse event. *Id.* at 907 (holding that federal employee was time-barred because time began to run from the date of his resignation rather than the date plaintiff discovered the allegedly more favorable treatment of another employee three years later); *see also Wilson*, 65 F.3d at 404 (5th Cir. 1995) (upholding grant of summary judgment where plaintiff failed to meet burden of showing EEOC should have applied equitable tolling to her case). Dukes admits she was friendly with Gloston in the time leading up to his selection for the position, and has not demonstrated to the Court that she made any inquiries of him or the selecting officials at or near the time of his selection regarding his qualifications. The Court finds Dukes has not produced sufficient evidence that equitable tolling or any other exception to the 45-day time period should apply in her case.

The Department of Veterans Affairs OEDCA dismissed Dukes's claim of discrimination and retaliation based on the denial of this promotion as untimely when it reviewed the claim. For the reasons detailed above, this Court agrees with that determination and therefore dismisses Dukes's claim for denial of promotion for failure to timely exhaust her administrative remedies.

The Court will not take up any other part of Defendant's motion to dismiss for failure to state a claim for which relief can be granted here, given that it examines herein the merits of Defendant's alternatively filed summary judgment motion and evidence.

## II.    Summary Judgment Standard

Summary judgment may be granted if the moving party shows there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding summary judgment, the Court construes all facts and inferences in the light most favorable to the nonmoving party. *Richter v. Merchs. Fast Motor Lines, Inc.*, 83 F.3d 96, 98 (5th Cir. 1996). The standard for determining whether to grant summary judgment "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon the record evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990).

Both parties bear burdens of production in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). First, the moving party has the initial burden of showing there is no genuine issue of any material fact and judgment should be entered as a matter of law. FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322–23; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The nonmoving party must then come forward with competent evidentiary materials establishing a genuine fact issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256–57; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). However, "[n]either 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the non-movant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

Plaintiff here has filed no response. However, a "motion for summary judgment cannot be granted simply because there is no opposition, even if the failure to oppose violated a local rule." *Hibernia Nat'l. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir.

1985). "When the non-movant fails to provide a response identifying disputed issues of fact, the Court is entitled to accept the movant's description of the undisputed facts as *prima facie* evidence of its entitlement to judgment." *Eversley v. Mbank Dallas*, 843 F.2d 172, 173–74 (5th Cir. 1988). By failing to timely respond, Plaintiff admits there are no disputed fact issues for trial, but Plaintiff does not waive any legal arguments based on the undisputed facts. *Id.* at 174.

## III. Discrimination Claims

To survive an employer's motion for summary judgment on an employment discrimination claim under Title VII or § 1981, a plaintiff must either produce direct evidence of an employer's animus or, if direct proof is lacking, produce evidence of enough facts to prove a *prima facie* case of discrimination and implicate the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 (5th Cir. 2004) (applying the *McDonnell Douglas* burden-shifting framework in the context of a § 1981 employment discrimination claim). The *McDonnell Douglas* burden-shifting scheme creates a presumption that a defendant unlawfully discriminated against the a plaintiff if the plaintiff produces evidence that shows:  (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and, in disparate treatment cases, (4) other similarly situated employees were treated more favorably. *E.g., Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001).  If the plaintiff establishes this *prima facie* case, the burden of production shifts to the employer to present evidence of legitimate, non-discriminatory reasons for its adverse decision. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). If the employer meets this burden, the burden of production then shifts back to plaintiff to prove the proffered reasons for any allegedly unequal treatment are a pretext for unlawful discrimination. *Id.*

at 143. At all times, however, the plaintiff bears the burden of *persuasion*—that is, persuading the trier of fact that the defendant intentionally discriminated against her. *Id.*

## IV.   Retaliation Claims

In addition to her race and sex discrimination claims, Dukes has asserted retaliation claims against Defendant under Title VII and § 1981. Title VII prohibits employers from retaliating against employees who engage in protected activities, such as filing a charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-3. To establish retaliation under Title VII, a plaintiff must show: (1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *E.g., Evans v. City of Houston*, 246 F.3d 344, 352(5th Cir. 2001). An employee can assert a parallel retaliation cause of action under § 1981, which requires the plaintiff to allege an identical *prima facie* case. *See Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 339 (5th Cir. 2003) (listing the same three elements of § 1981 retaliation cause of action).

To show a prima facie case of either discrimination or retaliation, Dukes must show she suffered an "adverse employment action." "Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Dollis v. Rubin*, 77 F.3d 777, 781–82 (5th Cir. 1995). Only "ultimate employment decisions" such as hiring, granting leave, discharging, promoting, and compensating qualify as adverse employment actions to establish a prima facie case of discrimination or retaliation. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997). The Court will examine Dukes's allegations one-by-one to determine whether any of them assert an adverse employment action sufficient to fulfill her prima facie case of discrimination or retaliation.

## A. Denial of Administrative Leave

In her complaint, Plaintiff asserts she was denied permission to take administrative leave to meet with her attorney to prepare for her many grievances and related legal appointments. Compl. at 2. Defendant claims Plaintiff cannot survive summary judgment on her denial of administrative leave claim because she cannot establish this denial rises to the level of an adverse employment action. M. Summ. J. at 5. The only allegation Dukes makes is she was sometimes denied administrative leave to meet with her attorney. Compl. at 2. Dukes admits in her deposition that there was never a time when she was completely denied leave to work on her case; rather, sometimes her requests for administrative leave were denied, but alternatively, she was always permitted to use her annual leave to take time off to work on her case. Dep. at 63.

Defendant is correct that Dukes's allegations she was denied the opportunity to take administrative leave do not rise to the level of an adverse employment action. *See Aportela v. Barnhart*, 2005 WL 1958963, at *18–19 (W.D. Tex., Aug. 15, 2005) (granting summary judgment for defendant because plaintiff had not raised a fact issue as to whether denials of administrative leave to attend a union conference or to meet with an EEO investigator amounted to ultimate employment decisions); *Hahn v. Bentsen*, Civ. A. No. 93-3820, 1996 WL 383129, at *7 (E.D. La., July 3, 1996) (holding that plaintiff was not subjected to any adverse employment action as a consequence of being denied administrative leave to tend to EEO matters over a six-month period and noting "absent proof that an employer like plaintiff's is required to give his employees administrative leave to tend to EEO related matters, the fact that plaintiff had to expend annual leave to tend to such matters does not rise to the level of egregiousness required by the Title VII federal sector jurisprudence.").

Here Dukes has not alleged nor proved that the Department of Veterans Affairs is required to give employees a specific amount of administrative leave to work on EEO complaints. Defendant brings to the Court's attention that 29 C.F.R. § 1614.605(b) provides complainants employed by federal agencies "shall have a *reasonable amount of official time*, if otherwise on duty, to prepare the complaint and to respond to agency and EEOC requests for information. . . . The agency is not obligated to change work schedules, incur overtime wages, or pay travel expenses to facilitate the choice of a specific representative or to allow the complainant and representative to confer." 29 C.F.R. § 1614.605(b) (emphasis added). Dukes admits she has received approximately 67–71 hours of administrative leave since 2001 to work on her EEO cases. Dep. Dukes at 48–49. Dukes has not carried her burden to prove Defendant engaged in any adverse employment action in denying her requests for administrative leave; therefore, she cannot establish a prima facie case of discrimination or retaliation and her claims fail as a matter of law.

**B. Demotion/Reassignment**

As previously mentioned, Dukes was transferred from the Release of Information department to Mildred Erickson's medical records department in March 2003. Dukes maintained her current pay grade and step after the transfer. Dep. Dukes at 16–17, 67. Dukes alleges her section, Release of Information, was closed and she was effectively demoted in retaliation for her EEO activities. Compl. at 2.

A lateral transfer with no change in pay is not the type of ultimate employment action necessary for an adverse employment action. *Soledad v. U.S. Dep't Treasury*, 304 F.3d 500, 507 (5th Cir. 2002); *Burger v. Central Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir.1999). Additionally, a transfer from a job Dukes likes to one she considers less desirable does not amount

to an adverse employment action. *Serna v. City of San Antonio*, 244 F.3d 479, 483 (5th Cir. 2001).

Many circuits, including this one, have been quick to quote the following passage written by Chief

Judge Posner:

> Obviously a purely lateral transfer, that is, a transfer that does not involve a demotion
> in form or substance, cannot rise to the level of a materially adverse employment
> action. A transfer involving no reduction in pay and no more than a minor change
> in working conditions will not do, either. Otherwise every trivial personnel action
> that an irritable, chip-on-the-shoulder employee did not like would form the basis of
> a discrimination suit. The Equal Employment Opportunity Commission, already
> staggering under an avalanche of filings too heavy for it to cope with, would be
> crushed, and serious complaints would be lost among the trivial.

*Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996); *see Burger*, 168 F.3d 875,

879 (quoting the passage in holding that denial of employee's request for a purely lateral transfer was

not "ultimate employment action," of kind required to support retaliation claim under Title VII).

It is unclear to the Court exactly why Dukes alleges this reassignment was an effective

demotion. To establish a transfer was an adverse action, she must present sufficient evidence that

the transfer involved "changes in duties or compensation or can objectively be characterized as a

demotion." *Hunt v. Rapides Healthcare Sys.*, 277 F.3d 757, 770 (5th Cir. 2001). The Court finds

Dukes has not come forward with such evidence, and that her reassignment did not amount to an

adverse employment action sufficient to sustain her prima facie case.

Even if Dukes's transfer could somehow constitute an adverse employment action, she has

not alleged a causal link between her protected activity and the transfer, nor has she identified a

similarly situated employee treated better than she was. In fact two other employees, both of whom

were white males, were also transferred during the same organizational realignment to join

Erickson's department; this fact decreases the likelihood that Dukes was transferred for a

discriminatory reason because of her race or sex or in retaliation for her protected activity. Accordingly, Dukes has failed to allege a prima facie case of discrimination or retaliation based on her job transfer claims.

### C. Performance Evaluation

Dukes alleges she did not receive a performance evaluation from Lenard Gloston which was due on May 30, 2003. Compl. at 2. The evidence establishes Dukes suffered no harm—that is, she never lost any pay or benefits—as a result of not receiving this evaluation. Dep. Dukes at 82–83. Dukes was reassigned to work for Mildred Erickson effective March 23, 2003, and was no longer under Gloston's supervision on March 31, 2003 when the evaluation was due. Dep. Dukes at 82–83.

Defendant asserts that a failure to timely and properly evaluate Dukes's work, even if true, does not alone rise to the level of an ultimate employment decision under *Dollis*. This Court agrees that not receiving a performance evaluation is not the kind of adverse employment action sufficient to sustain Plaintiff's prima facie case. *See Broadway v. Dep't of Homeland Security*, No. Civ.A.04-1902, 2005 WL 1400452, at *3 (E.D. La. June 2, 2005) (granting defendant's motion to dismiss for failure to state a claim because "a failure to timely and properly evaluate Plaintiff's work does not alone rise to the level of an ultimate employment decision as described in *Dollis*."). Moreover, Dukes cannot establish that someone similarly situated outside her protected class was treated more favorably because she admits two white males also did not receive their evaluations from Gloston for that period. Dep. Dukes at 84–85. Accordingly, she cannot survive summary judgment on this claim.

## V. Hostile Work Environment/Harassment

Defendant also contends it is entitled to summary judgment on Dukes's "hostile work environment" claim against it. In order to state a prima facie claim for a hostile work environment under Title VII, a plaintiff must show: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on the plaintiff's protected status; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). If the harassment is alleged to have been committed by a supervisor, the plaintiff need only prove the first four elements. *Felton v. Polles*, 315 F.3d 470, 484 (5th Cir. 2001).

"For harassment to affect a 'term, condition, or privilege of employment' it must be 'sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment.'"[4] *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001). In determining whether a working environment is abusive or hostile, the Court looks to the following factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating as opposed to a mere offensive utterance; and (4) whether it unreasonably interferes with the plaintiff's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The plaintiff must be able to demonstrate the working environment is both objectively and subjectively hostile or abusive. That is, the environment must be such that: (1) "a

---

[4] As the Supreme Court noted in *Morgan*, however, "[h]ostile environment claims are different in kind from discrete acts." 536 U.S. at 115. No adverse employment action need be proved to make out a hostile work environment claim. *Casiano v. AT&T Corp.*, 213 F.3d 278, 284 (5th Cir. 2000).

reasonable person would find [it] hostile or abusive;" and (2) the plaintiff herself actually perceived it as such. *Id.* at 21.

Defendant asserts Dukes cannot establish elements 2-5 necessary to state a prima facie case of a hostile work environment. Mot. Summ. J. at 4. The Court sees major obstacles to many of these elements as well, particularly to establishing the harassment affected a term, condition, or privilege of employment. Dukes's allegations of harassment and a hostile work environment include the following: (1) her effective demotion claim; (2) accusations she instigated a riot; (3) Minerva Garcia was told not to talk to Plaintiff; (4) she was denied administrative leave; (5) her reputation was totally destroyed and she was asked by supervisors and staff not to include them in her complaints; (6) she was denied proper equipment to do her job and had no privacy in her office; (7) she was falsely accused of calling her Congressman; (8) Clementine Ray told Minerva Garcia not to talk to EEO during Plaintiff's EEO investigation; and (9) she did not receive a performance evaluation from Gloston. Compl. at 2–3. Many of these complaints have been previously evaluated individually as they relate to discrimination and retaliation.

Taken as a whole, these allegations, which the Court notes have not been proven through competent summary judgment evidence, are not sufficiently severe or pervasive to affect a term, condition, or privilege of employment. Looking to the factors laid out above, Dukes does not describe frequent or severe discriminatory conduct; she does not identify any incident that could be considered physically threatening or humiliating; many of the events described appear to be mere offensive utterances; and Dukes does not describe facts to support that any of these interfered with her work performance. Further, she has certainly not described, nor supplied any evidence beyond conclusory allegations to suggest, a workplace permeated with discriminatory intimidation, ridicule,

or insult that is sufficiently severe or pervasive to alter the work environment. Additionally, none of the events Dukes complains of would support an inference she was being targeted based on her race or sex. Therefore, her hostile work environment claims cannot survive Defendant's motion for summary judgment.

### Conclusion

In accordance with the foregoing discussion:

IT IS ORDERED Defendant R. James Nicholson's Motion to Dismiss for failure to exhaust administrative remedies [#18] is granted as to Plaintiff's denial of promotion claim.

IT IS FURTHER ORDERED Defendant's Motion for Summary Judgment [#18] is GRANTED.

SIGNED this the _12th_ day of December 2005.

SAM SPARKS
UNITED STATES DISTRICT JUDGE